UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TERESA HINDERS, | : | Case No. 3:12-cv-273 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF DAYTON, OHIO, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 11)**

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 11) and the parties' responsive memoranda (Docs. 13, 20).

## I. BACKGROUND FACTS

Plaintiff, a Caucasian female, was employed with the City of Dayton ("City") as a Human Resources Analyst from 2001 through 2006 and was re-hired by the City in September 2007. Plaintiff alleges that she was subjected to wage discrimination on the basis of gender and race and that the City retaliated against her for exercising her Title VII rights. The City maintains that there are no genuine issues of material fact remaining for trial and that it is entitled to judgment as a matter of law on all claims.

## II. UNDISPUTED FACTS[1]

1. Plaintiff, Theresa Hinder, a Caucasian female, was employed with the City from 2001 through 2006 as a Human Resources ("HR") Analyst, pay grade 1377, Step 86, hourly rate of $20.20. (Doc. 12 at 7).

2. From 2001 through 2006, Hinders' job classification did not change. (*Id.*)

3. When Hinders resigned from City employment in 2006, her pay grade was MM-4, Step TAR, hourly rate of $26.59. (*Id.* at 8).

4. The City re-hired Hinders in September 2007 as a HR Analyst-Classification/Compensation, pay grade MM-4, hourly rate of $27.39. (*Id.* at 18).

5. Hinders filed a complaint with the Ohio Civil Rights Commission ("OCRC") against the City and former City Manager Rashard Young in 2008, alleging race discrimination in connection with her not receiving a probationary raise. (*Id.* at 20).

6. The OCRC issued a no probable cause finding on Hinders' claim, and she did not pursue the matter further. (*Id.* at 21, 89-91).

7. During her tenure as a HR Analyst-Classification/Compensation, Hinders has never had a direct report. (*Id.* at 25).

8. Hinders received a 4.25% merit pay increase in June 2008, which was the highest possible raise a City employee could get at the time aside from promotional increases. (*Id.*)

9. Hinders received a 1.19% Step Increase in September 2009, which was a uniform raise for all City employees. (*Id.* at 26).

10. Hinders received a 7.34% equity adjustment in May 2011, effective January 3, 2011, plus a one time retroactive payment of $1,611.20, resulting in an hourly rate of $31.01 and an annual salary of $64,500.80. (*Id.* at 29).

11. Only a few City employees received equity adjustment increases in 2011, and none greater than Hinders. (*Id.* at 27).

---

[1] *See* Doc. 11, Ex. 11 and Doc. 19.

2

12. Hinders received a 1.16% pay increase in January 2013, which was a uniform raise for all City employees. (*Id*. at 29).

13. Stephan Gaytko, a Caucasian male, was employed by the City in 1985, left for a time, and then returned to City employ in 2004 as Safety Coordinator: Department of Water, pay grade MM-4, Step TAR, hourly rate $27.40. (*Id.* at 74). Gaytko received a 3.5% merit pay increase in January 2005, and a 3.5% merit pay increase in January 2006. (COD-GAYTKO-00049; 00024).

14. Gaytko transferred to HR as an HR Analyst in 2006. (*Id*.)

15. Hinders has no knowledge of the circumstances surrounding Gaytko's transfer from the Water Department to HR. (Doc. 12 at 31-33).

16. Gaytko received a 3% probationary increase in December 2007, a 4% merit increase in June 2008, and a step increase of 1.19% in June 2009. (Doc. 12 at 90; COD-GAYTKO-00022, 00023, 00006).

17. By the time Gaytko left HR to accept a promotion with the Police Department, his hourly rate was $32.93, and Hinders' was $31.01; a difference of $1.92 per hour. (COD-00002; COD-GAYTKO-00006; Interrogatories, ¶ 6).

18. Hinders does not compare her work to that of any other male HR employee. (Doc. 12 at 76-77).

19. Hinders applied for the job of Special Projects Coordinator: Department of Police by submitting her resume to Civil Service. (*Id*. at 94).

20. She interviewed for the position as did Gaytko and several other qualified candidates. (*Id.*) The City promoted Gaytko. (*Id*.)

21. Dawn Manual, an African-American female, began her career with the City as a Financial Services Supervisor: Division of Accounting and Treasury. (COD-MANUEL-00042). She transferred to HR as an HR Analyst in 2005, bringing with her a salary history from her accounting job. (*Id.* at 107).

22. Joyce Holloway, an African American Female, is a Systems Analyst: Division of Information Technology, with several direct reports, pay grade MM5b, Step TAR, hourly rate of $35.10. (COD-00013).

3

23. Gaytko began working for the City 16 years before Hinders.  (Doc. 12 at 31).

24. Gaytko received a 4% merit pay increase in 2008 to Hinders' 4.25% merit pay increase.  (*Id*.)

25. Gaytko did not receive a 7.34% equity adjustment in 2011.  (*Id.* at 33-34).

26. The job titles, descriptions and requirements of HR Analyst and HR Analyst Classification/Compensation are different.  (*Id.* at 34-35; COD-00058-00059; COD-00055-00057).

27. The City has reduced the HR department staff by nearly half since Hinders started there in 2001; from approximately twenty employees to eleven.  (Doc. 12 at 66).

28. Citywide seniority is a factor to be considered in setting compensation for City management personnel.  (*Id*. at 71).

29. Work experience is a favor to be considered in setting compensation for City management personnel.  (*Id*.)

30. Job duties, requirements, and performance are factors to be considered in setting compensation for City management personnel.  (*Id.* at 72).

31. Compensation history is a factor to be considered in setting compensation for City management personnel.  (*Id*.)

### III.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be

4

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. Equal Pay Act

Plaintiff claims that the City violated the Equal Pay Act ("EPA") because it paid Stephen Gaytko, a male employee, more money than her.[2]

To establish a *prima facie* case of wage discrimination under the EPA, and thus under Ohio law, a plaintiff must prove: (1) an employer; (2) pays or paid different wages; (3) to an employee of a different sex or race; (4) in an establishment; (5) when they are performing equal work on jobs; (6) which require equal skill, effort, and responsibility; (7) under similar conditions. *Hollowell v. Soc'y Bank & Trust*, 605 N.E.2d 954, 959 (Ohio App. 1992).

Generally, the EPA prohibits employers from paying employees at a rate less than that paid to employees of the opposite sex for performing equal work. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)). To establish a *prima facie* case of wage discrimination under the EPA, plaintiffs must show that their

---

[2] The Ohio EPA and Federal EPA use identical standards and thus can be analyzed together. 29 U.S.C. § 206; Ohio Rev. Code. § 4111.17. *See Henry v. Lenox*, 768 F.2d 746, 752 (6th Cir. 1985).

5

employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Id.* Whether a job is substantially equal is determined on a case-by-case basis and resolved by an overall comparison of the work, not its individual segments. *Id.* at 359. The focus at the *prima facie* stage is on actual job requirements and duties rather than job classifications or titles. *Id.* at 362; *see also* 29 C.F.R. § 1620.13(e) ("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.").[3]

At all times relevant to this action, Plaintiff held the position of HR Analyst-Classification/Compensation and Mr. Gaytko held the position of HR Analyst. Plaintiff and Mr. Gaytko held slightly different job titles and their job descriptions were not identical.[4] (Doc. 14, Exs. 3, 4). However, based on the record evidence, the skill, effort, responsibility, and working conditions of the two jobs were substantially equal.

---

[3] "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility, and working conditions." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). In comparing jobs under the Act (for purposes of establishing a *prima facie* case), the Court emphasizes that the jobs and not the employees are compared. Thus, "only the skills actually required by [the comparable] jobs, not the abilities of the persons currently in those positions are relevant [and] it is the job as a whole, not just selected aspects of it that must form the basis for comparison." *EEOC v. The City Council of the City of Cleveland*, No. 88-3726, 1989 U.S. App. LEXIS 7281, at *13-14 (6th Cir. May 24, 1989).

[4] Gaytko was hired as an HR Analyst and to perform information technology work in the office. (Doc. 14 at 32, 35). Gaytko managed the HR intranet website and the KRONOS software system. (Doc. 14 at 32, 35; Doc. 12 at 76). Gaytko was full-time on KRONOS, whereas Plaintiff only maintained the separate BANNER software system a percentage of the time. (Doc. 12 at 80-2; Doc. 21 at 16).

Specifically, both Plaintiff and Mr. Gaytko reported directly to Wanda Smith. (Doc. 18 at 9-10).[5] Ms. Smith was aware of the duties, responsibilities, and working conditions of both employees and testified that their positions were equal. (*Id.* at 9-10, 17-18). Smith's testimony is corroborated by Dawn Manuel.[6] (Doc. 16 at 21).[7] Accordingly, the Court finds that Plaintiff has established a *prima facie* EPA violation.

If a plaintiff establishes a *prima facie* EPA violation, the defendant bears the burden to prove that the wage differential is justified under one of the four affirmative defenses set forth under 29 U.S.C. Section 206(d)(1): (1) a seniority system; (2) a merit system; (3) a system which measures earning by quantity or quality of production; or

---

[5] Wanda Smith was employed by the City as its Human Resources Director from 2009 through January 25, 2011. (Doc. 18 at 8).

[6] Ms. Manuel has worked in the City's Human Resources Department for approximately eight years as an HR Analyst and has a Bachelor's Degree in Personnel Management and a Master's Degree in Business Administration. (*Id*. at 20-22).

[7] In fact, Plaintiff's position required education and experience beyond that required of other HR Analysts. (Doc. 18 at 12). Plaintiff's job description indicates that her position requires a Bachelor's Degree and five years human resources experience with one year of classification or compensation experience as compared with Mr. Gaytko's job, which only required a Bachelor's Degree and two years experience or an Associates Degree and five years experience in a human resources field. However, this is insufficient evidence to differentiate between the two positions. "[D]efendant cannot distinguish two jobs for the purposes of the EPA by showing that a lower paid job requires higher skill and responsibility. While 'differences in skill, effort, or responsibility…might be sufficient to justify a finding that two jobs are not equal…if the greater skill, effort, or responsibility has been required of the higher paid sex, [such differences] do not justify such a finding where the greater skill, effort, or responsibility is required of the lower paid sex.'" *Beck-Wilson,* 441 F.3d at 360 (quoting 29 C.F.R. § 1620.14(a)). "As the Sixth Circuit explained, it defies reason and logic to suggest that an employer may defend a case of wage discrimination under the EPA by proving that a woman works more but is paid less than her male peers." *Kienzle v. General Motors, LLC*, 903 F.Supp.2d 532, 547 (E.D. Mich. 2012).

(4) any other factor other than sex. *Beck-Wilson v. Principi*, 441 F.3d 353, 360 (6th Cir. 2006). As the defendant is the party bearing the burden of proof on its affirmative defense, it must demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex or race. *Butin v. Breathitt County Bd. of Educ.*, 134 F.3d 786, 799-800 (6th Cir. 1998).[8] Thus, judgment as a matter of law is proper only if the record shows that the defendant has established the defense so clearly that no rational jury could find to the contrary. *Equal Employment Opportunity Com'n v. State of Delaware Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989).

It is undisputed that Mr. Gaytko earned $32.93/hour before transferring from Human Resources to the Police Department in 2011. After Plaintiff's July 11, 2011 7.34% equity adjustment retroactive to January 2011, Plaintiff earned $31.01/hour.[9] Defendant argues that Gaytko's higher pay was justified because of varying duties,

---

[8] While an employer cannot use a factor "which causes a wage differential between male and female employees absent an acceptable business reason," courts have observed that the "factor other than sex" exception was intended to be a broad exception. *Wachter-Young v. Ohio Cas. Grp.*, 236 F. Supp.2d 1157, 1164 (D. Or. 2002).

[9] Plaintiff's claims in this case involve her salary from the time she returned to work with the City in September 2007 through the time Mr. Gaytko left his position as a Human Resource Analyst to take another position with the City in July 2011. In 2007, Mr. Gaytko transferred into the position of HR Analyst. (Doc. 14, Ex. 8 at 4). He was brought into the position at a pay rate of $30.38 per hour. (*Id.*) At the time Plaintiff returned to employment with the City she was paid a rate of $27.39 per hour and Mr. Gaytko was being paid $30.38 per hour. (*Id.*, Ex. 10 at 9, Ex. 8 at 4). By December 2007, Mr. Gaytko's rate of pay had increased to $31.29 per hour while Plaintiff's pay remained at $27.39 per hour. (*Id.*, Ex. 10 at 8; Ex. 8 at 5). By June 20089**[FIX]**, Mr. Gaytko's pay rate was $32.93 per hour and Plaintiff's pay was $28.89 per hour. (*Id.*, Ex. 10 at 9; Ex. 8 at 6). On July 11, 2011, the City granted Plaintiff an equity adjustment and raised her pay to $31.01 per hour. (*Id.*, Ex. 10 at 11). The adjustment was made retroactive to January 3, 2011. (*Id.* at 10).

seniority, citywide experience, and compensation history. (Doc. 12 at 71-72; Interrogatories at ¶ 6).

First, the City maintains that Mr. Gaytko was paid more than Plaintiff due to "varying duties." However, the evidence supports a finding that each HR Analyst had an area of concentration, but performed work requiring substantially equal skill, effort, and responsibility to the work performed by all other HR Analysts. (Doc. 18 at 17). Plaintiff was required to perform the "varying duties" assigned to all HR Analysts in addition to her responsibilities unique to employee classification and compensation. (Doc. 18 at 12, 17; Doc. 16 at 15-16; Doc. 12 at 63, 76).

Next, Defendant maintains that Mr. Gaytko had more seniority. Plaintiff's seniority date with the City is 2001. (Doc. 12 at 10). Mr. Gaytko's seniority date is January 12, 2004. (Doc. 14 at 8). While Plaintiff left City employment for less than one-year, from September 2006 through September 2007, she retained her seniority pursuant to City policy. (Doc. 12 at 10; Doc. 14 at 10-11). Mr. Gaytko's previous period of employment does not count toward his City seniority because he left City service for more than one-year before returning in 2004. (Doc. 14 at 54).

With respect to citywide experience, City policy states that when a City employee makes a lateral transfer to a different department within the same pay grade, his or her salary does not change. (Doc. 14 at 39; Doc. 11, Ex. 1). When Mr. Gaytko left his job as a Safety Coordinator in the Water Department, his hourly rate was $29.35. (Doc. 14 at 37, 39). Consistent with City policy, when Gaytko laterally transferred into HR, his pay

9

did not change.[10] (*Id.*)  During the time that Plaintiff and Gaytko both worked in HR, he received a total of 8.19% in raises and she received a total of 12.78% in raises.  (Doc. 11, Ex. 1 at ¶¶ 2, 3).  However, a review of Mr. Gaytko's job description reveals that "citywide experience" is not an essential function of his position, nor is it mentioned anywhere on that description.  (Doc. 14, Ex. 4).  Additionally, the City provides no explanation as to how or why "citywide experience" would entitle Mr. Gaytko to more compensation.

The City also argues that Mr. Gaytko was paid more than Plaintiff due to his compensation history.  However, the fact that Mr. Gaytko was paid a higher salary than Plaintiff throughout his employment as an HR Analyst is not a defense to Plaintiff's wage discrimination claim.  The City Manager had the authority to reduce Mr. Gaytko's salary to bring it in line with Plaintiff's salary, as well as the authority to adjust Plaintiff's salary and to retroactively bring it in line with Mr. Gaytko's salary, but declined to take either action.  (Doc. 17 at 10; Doc. 12 at 48).

Accordingly, the Court finds that genuine issues of material fact exist as to whether the City meets its burden with respect to its affirmative defenses.

B.  **Gender Discrimination**

When an Equal Pay Act claim and a Title VII claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, "the standards of liability under the two statutes are sufficiently similar" that the disposition with respect to the two

---

[10] There is no violation of the Equal Pay Act when a pay differential has a bona-fide business justification.  *E.E.O.C. v. J.C. Penney Co.*, 843 F.2d 249, 252 (6th Cir. 1988).

claims should be the same. *Korte v. Diemer*, 909 F.2d 954, 957 (6th Cir. 1990). "Any violation of the Equal Pay Act is also a violation of Title VII." 29 C.F.R. § 1620.27(a).

As discussed *supra* in Section IV.A, genuine issues of material fact exist as to whether the City violated the EPA by paying Mr. Gaytko more than Plaintiff. Therefore, Plaintiff's Title VII and Ohio Revised Code Section 4112 sex discrimination claims based on wage discrimination survive summary judgment. The same evidence which exists to refute the City's affirmative defenses sufficiently supports a claim of pretext (*i.e.*, that the City's stated reasons for paying Mr. Gaytko a higher salary were a pretext for unlawful sex discrimination).

### C. Race Discrimination

Next, Plaintiff alleges that the City discriminated against her on the basis of race because it paid African-American female employees more than her. Plaintiff is a Caucasian female and thus must establish a *prima facie* case of reverse racial discrimination.

To establish a *prima facie* case of reverse racial discrimination, a plaintiff must show that: (1) background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority, and (2) the employer treated differently employees who are similarly-situated but not members of the protected class. *Aker v. New York & Co., Inc.*, 364 F.Supp.2d 661, 666 (N.D. Ohio 2005).

Plaintiff's race discrimination claim is premised upon the alleged disparity between the manner in which her request for an equity adjustment was processed and the

11

manner in which the request for an equity adjustment by Ms. Holloway, an African American employee, was processed. Both Plaintiff and Ms. Holloway made requests for equity adjustments in 2011. There are disputed issues of fact with respect to how and when those salary adjustments were accomplished.

Email communications indicate that approximately eleven months passed between the time of Plaintiff's request and her receipt of a salary adjustment. (Doc. 17, Ex. 20 at 5; Doc. 14, Ex. 10 at 11). However, Plaintiff initially failed to follow proper procedure in requesting an equity adjustment. (Doc. 17 at 7-8; Doc. 12 at 65). Plaintiff claims that Ms. Holloway's request was expeditiously approved in a matter of six days and fully processed within twenty-three days. (Doc. 14, Exs. 5, 6, 9). However, Ms. Holloway had allegedly been seeking a pay increase for two years prior to receiving her May 2011 equity adjustment and retroactive pay. (Doc. 11, Ex. 1 at ¶ 3). Ms. Holloway also received significantly more retroactive pay than Plaintiff.[11]

Notwithstanding these disputed facts, Plaintiff's *prima facie* case fails, because the record is completely devoid of any evidence that supports a finding that Defendant is the unusual employer who discriminates against the majority.[12]

---

[11] Plaintiff received retroactive pay of $1,611.20, while Ms. Holloway received retroactive pay of $17,920.74. (Doc. 14, Exs. 9, 10 at 11).

[12] For example, in *Sampson v. Sec'y of Transp.*, No. 98-5669, 1999 U.S. App. LEXIS 14142 (6th Cir. 1999), the Court found that plaintiff had satisfied the "background circumstances" requirement for a *prima facie* case by submitting evidence that the employer had policies reflecting "an organizational preference for establishing a diverse group of employees" and evidence suggesting that the defendant had relied on these diversity policies in promoting an African American employee in lieu of the white plaintiff. *Id.* at 4-5. Conversely, in the instant

**D.     Retaliation**

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that this exercise of her protected civil rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).  "The burden of establishing a *prima facie* case in a retaliation case is not onerous, but one easily met. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).  If the defendant articulates such a reason, the plaintiff must then show that the articulated reason is merely pretext for discrimination. *Id.*

*1. Prima facie case*

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission in 2008 alleging race discrimination.  She also made a complaint to Stanley Earley, Deputy City Manager, via email in August 2010 about race discrimination.  (Doc. 17, Ex. 20 at 5).  After Plaintiff filed her charge of discrimination with the Ohio Civil Rights Commission and sent an email message to Mr. Earley, she requested an equity

---

case, there is no evidence that any kind of policy favoring minorities was in place and there is no evidence of any other background circumstances suggesting that Defendant is the unusual employer who discriminates against the majority.

adjustment to bring her salary up to the level of Mr. Gaytko's salary. (*Id.*, Ex. 20 at 5). Plaintiff was granted a salary increase, but even after the increase, her salary remained almost $4,000.00 per year less than Mr. Gaytko's salary, and she was only provided approximately six-months of retroactive compensation, despite the salary disparity existing for over three years.

Plaintiff went through the chain of command to request an equity adjustment to bring her salary up to the level of Mr. Gaytko's salary. Email communications show that she began pursuing the matter as early as August 2010. (Doc. 17, Ex. 20 at 5). In January 2011, Wanda Smith, who was the Human Resources Director at that time, made a request to the City Manager, through Mr. Earley, that Plaintiff's salary be raised to the level of Mr. Gaytko's salary. (Doc. 18 at 25). Mr. Earley, who is African American, informed Ms. Smith that he did not know what to do because Plaintiff had filed a complaint against him and he did not feel comfortable handling the matter. (*Id.* at 26-27). Smith believed that Mr. Earley was referring to Plaintiff's Ohio Civil Rights Commission charge of discrimination as she was unaware of any other complaints that Plaintiff had filed; however email communications show that Plaintiff also made a complaint directly to Mr. Earley about racial discrimination in August 2010. (Doc. 18 at 27-28; Doc. 17, Ex. 20 at 5).

Ms. Smith retired on January 25, 2011. (Doc. 18 at 7). Plaintiff did not receive her equity adjustment until July 2011. (Doc. 14, Ex. 10 at 11). The City Manager did not approve the amount recommended by Smith and Plaintiff was given a lesser amount.

14

(Doc. 18 at 25; Doc. 14, Ex. 10 at 11). Ms. Smith testified that in all other cases where she had made a recommendation for an equity adjustment, the City Manager gave the employee the amount that she recommended and in one case an amount greater than she had recommended. (Doc. 18 at 30-34).

Defendant seems to argue that there was no adverse employment action because Plaintiff was neither demoted nor received any reductions in pay after she filed the discrimination charge. In fact, she received a 1.19% step increase in September 2009, which was uniform for all City employees, and a 7.34% equity adjustment in May 2011, effective January 3, 2011, plus a one-time, six month retroactive payment of $1,611.20. (Doc. 12 at 26-27). Only a few city employees received equity adjustment increases in 2011, and none greater than Plaintiff. (Doc. 12 at 26-27; Doc. 17 at 9-1; Doc. 14, Ex. 15). However, both the delay in receiving the equity adjustment and the failure to adjust her salary to the amount recommended evidences an adverse employment action.[13]

Accordingly, Plaintiff has demonstrated a *prima facie case* of retaliation.

### 2. *Legitimate nondiscriminatory reasons*

Defendant argues that even if Plaintiff can establish a *prima facie* case, her equity adjustment was not delayed. Brent McKenzie, the Deputy Director of Human Resources

---

[13] In assessing whether conduct rises to the level of an adverse employment action, "courts look for at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities." *Trepka v. Bd. Of Educ. Of the Cleveland City Sch. Dist.*, 28 Fed. App'x 455, 462 (6th Cir. 2002). Because Plaintiff's actions allegedly affected her salary, the Court considers this an adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) (noting that a lower salary increase than otherwise deserved constitutes an adverse action).

for the City, maintains that the process for reviewing and approving Plaintiff's 2011 equity adjustment was not delayed from his experience working for the City. (Doc. 14 at 22). Moreover, to the extent there was a delay, the delay was a result of Ms. Smith's retirement, the City's budgetary problems, and a heightened number of requests for salary adjustments.[14] (Doc. 17 at 9-11; Doc. 14 at 22). With respect to Ms. Holloway's equity adjustment allegedly having been approved more quickly than Plaintiff's request for the same, Defendant claims that Ms. Holloway had been seeking a pay increase for two years before receiving her May 2011 equity adjustment and retroactive pay. (Doc. 20, Ex. 1 at ¶ 3).

Additionally, when Plaintiff initially requested a raise in 2010, she failed to follow proper procedure. (Doc. 17 at 7-8; Doc. 12 at 65). Defendant maintains that when Plaintiff properly requested a raise from the Director of Human Resources, the matter was taken under advisement and Plaintiff was one of a select few to receive an equity adjustment in 2011. (Doc. 14, Ex. 15).

### 3. *Pretext*

To establish pretext, plaintiff has to first prove the falsity of the reason given by defendants. Specifically, plaintiff must show that the reason given by the defendant was not the real reason, but that retaliation was actually the reason for taking the adverse employment action. Plaintiff can prove pretext by demonstrating that the stated reason:

---

[14] "We had a number of requests – not a large number, but there were a number of requests for salary adjustments. I can't remember exactly how many but less than a dozen; and we were in a period of time when there weren't any raises going on." (Doc. 17 at 9).

(1) has no basis in fact, (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

With respect to the timeframe of Ms. Holloway's equity adjustment, it is unclear whether Ms. Holloway actually requested multiple adjustments, one of which was processed within twenty-three days. (Doc. 14, Exs. 5, 6, 9). However, what does not appear in dispute is that Ms. Holloway received more retroactive pay than Plaintiff. (Doc. 14, Exs. 9, 10). The City fails to address why Ms. Holloway received more retroactive pay than Plaintiff. The City also fails to explain why the City Manager failed to award Plaintiff the amount recommended by her supervisor, Ms. Smith. Moreover, Ms. Holloway was awarded an equity adjustment in May 2011 and Plaintiff received her equity adjustment in July 2011. To the extent Ms. Smith's January 2011 retirement or budget concerns were the reason for the delay and/or denial of Plaintiff's equity adjustment/ retroactive pay to the degree recommended by Ms. Smith, these issues would have existed two months prior when Ms. Holloway was awarded an equity adjustment. While the City was not bound by a specific time table in the processing of Plaintiff's request, when compared with the time it took to process Ms. Hollway's request and the result of Ms. Holloway's request, there is sufficient evidence of pretext to present to a jury.

Accordingly, the Court finds that Plaintiff has evidenced pretext such that a reasonable finder of fact could conclude that but-for Plaintiff's filing of a charge of

discrimination with the Ohio Civil Rights Commission, and making an internal complaint of discrimination to Mr. Earley, she would have received an equity adjustment that would have increased her salary to the level of Mr. Gaytko's salary in a timely manner and she would have received a greater amount of retroactive pay.

### E. Punitive Damages

Punitive damages are recoverable in a Title VII case upon a demonstration by the plaintiff that the employer engaged in "discriminatory practices with malice or reckless indifference to the federally protected rights of an individual." 42 U.S.C. § 1981a(b)(1). Under this standard, although a demonstration of egregious conduct would be sufficient, at a minimum the plaintiff must show that the employer discriminated in the face of a perceived risk that its actions will violate federal law. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

The City, through its City Manager and Deputy City Manager, were made aware of the inequality in pay between Plaintiff and Mr. Gaytko's pay. Additionally, there is evidence that the City Manager and Deputy City Manager ignored the recommendation of the City's Human Resources Director to raise Plaintiff's salary to the same rate as Mr. Gaytko's salary. Plaintiff argues that these decisions can be directly linked to the City's animus and malice against her because she filed a charge of discrimination with the Ohio Civil Rights Commission and made an internal complaint of race discrimination.

Because there are genuine issues of material fact as to whether the City acted with malice or recklessness indifference, summary judgment denying punitive damages cannot be entered.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically:

(1) Plaintiff's claim for race discrimination is **DISMISSED** as a matter of law; and

(2) Plaintiff's claims for violation of the equal pay act, sex discrimination, retaliation, and punitive damages will proceed to trial.

**IT IS SO ORDERED**.

Date:  10/21/13                               *s/ Timothy S. Black*
                                              Timothy S. Black
                                              United States District Judge